Johnny Manriquez, Esq. (CSBN 217126)
**AH General Counsel Services**
johnny.manriquez@ahgcservices.com
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
Telephone: (619) 246-3033

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA MONA, LLC, a California limited liability company, | Case No.: 5:23-cv-02340-JGB-SHK |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| v. | |
| TARGET CORPORATION, and DOES 1-10, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## NATURE OF THE CASE

PLAINTIFF, Vera Mona, LLC ("PLAINTIFF") brings this action against DEFENDANT Target Corporation ("DEFENDANT") and Does 1-10 for Trademark Infringement under the Lanham Act 15 U.S.C. § 1114 et seq., Unfair Competition, False Designation of Origin, False Description, and Trade Dress Infringement under the Lanham Act 15 U.S.C. § 1125(a) et seq., State Common Law Trademark Infringement under Cal. Bus. & Prof. Code § 14200 et seq., and State Unfair Competition under Cal. Bus. & Prof. Code § 17200 et seq. PLAINTIFF seeks actual damages, DEFENDANT's profits, and an award of attorneys' fees and costs.

1

## PARTIES

1.      PLAINTIFF is a California Limited Liability Company organized and existing under the laws of California with its principal place of business at 27574 Commerce Center Drive, Suite 137, Temecula, California 92592.

2.      PLAINTIFF has been selling since 2014, and continues to sell and distribute its cosmetic product, Color Switch, both nationally and internationally through its website, veramona.com, and through physical and online vendors.

3.      PLAINTIFF's founder and CEO, Leticia Cabrera-Calvo, began selling the Color Switch product in 2014.

4.      DEFENDANT is a citizen of Minnesota organized and existing under the laws of Minnesota with its principal place of business at 1000 Nicollet Mall, TPS-3165, Minneapolis, Minnesota 55403. DEFENDANT operates and sells its products through an extensive network of over 2,000 stores throughout the United States, including stores physically located in this District and State, in addition to its online website, www.target.com.

5.      PLAINTIFF is ignorant of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive ("Doe Defendants"), and therefore sues Doe Defendants by said fictitious names. PLAINTIFF will move to amend the complaint to allege the true names and capacities of said Doe Defendants when ascertained. PLAINTIFF is informed, believes and thereon alleges that each fictitiously named Doe Defendant is legally responsible in some manner for the occurrences and damages alleged herein, and that PLAINTIFF's damages as herein alleged were proximately caused by the acts of these Doe Defendants. For ease of reference, all allegations against DEFENDANT are also alleged against Doe Defendants.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a), (b) and (c).

7.      This Court has subject matter jurisdiction pursuant to the trademark laws

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

of the United States, 35 U.S.C. § 1 et seq., and pursuant to 28 U.S.C. §§ 1331, 1332, 1338(b) and (c), and 2201-2202 because this is an "actual controversy" between PLAINTIFF and DEFENDANT.

8.    This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367, and over the unfair competition claims pursuant to 28 U.S.C. § 1338(b). Further, this case primarily involves a federal question, complete diversity of citizenship exists, and the amount in controversy exceeds $75,000.

9.    This Court has personal jurisdiction over DEFENDANT based upon: (1) transaction of business by DEFENDANT in this judicial district; and (2) commission by DEFENDANT of the infringing and other tortious conduct underlying PLAINTIFF's claims directed into this judicial district.

10.    Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. § 1391 (b) and (c). DEFENDANT does business in this District for purposes of the foregoing venue statute and a substantial portion of the events giving rise to the claims set forth in this Complaint occurred in this District.

## BACKGROUND FACTS

### PLAINTIFF and PLAINTIFF's Product

11.    In 2013, PLAINTIFF's founder and CEO, Leticia Cabrera-Calvo ("Letty Calvo"), while obtaining her Master's in Business Administration, invented the first-of-its-kind dry makeup brush cleaner. Letty Calvo named her invention "Color Switch." Color Switch immediately became popular among makeup artists and industry experts, as well as with general consumers, who are able to streamline their processes by utilizing the same makeup brushes repeatedly in a single session without having to wash them and wait for them to dry before using again.

12.    On August 14, 2014, PLAINTIFF applied to register the trademark for Color Switch in standard characters for a "cleaning tool for cosmetic brushes consisting of a cleaning sponge" with the United States Patent and Trademark Office ("USPTO").

13.    On March 17, 2015, the USPTO granted PLAINTIFF the trademark

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

registration for Color Switch (Reg. No. 4,703,823). A true and correct copy of the Color Switch registration certificate is attached hereto as **Exhibit A**.

14.    Since at least as early as 2015, PLAINTIFF has been continuously using the Color Switch trademark in connection with the manufacture, marketing, and sale of its dry makeup brush cleaner.

15.    On July 1, 2020, PLAINTIFF filed a Section 15 declaration of incontestability for its Color Switch trademark (Reg. No. 4,703,823). The Color Switch trademark registration is now incontestable.

16.    In addition to PLAINTIFF's incontestable trademark rights in its Color Switch trademark, PLAINTIFF owns Trade Dress rights in the product packaging for its Color Switch branded product. Specifically, PLAINTIFF has Trade Dress rights in the Color Switch product's circular metal packaging (giving the product a high-end look and feel), which prominently displays the Color Switch registered mark on the lid of the tin, and is placed in a square outer box with a clear window (so a consumer can view the tin), utilizing foundational colors of purple, blue/turquoise, pink, and white (collectively, the "PLAINTIFF's Trade Dress"). The PLAINTIFF's Trade Dress also includes promotional images showing the open tin, with the lid offset, so one can see the brush cleaning sponge inside.

17.    Over the past nine years, through PLAINTIFF's continuous use of PLAINTIFF's Trade Dress in connection with the sale of PLAINTIFF's Color Switch branded product, PLAINTIFF's Trade Dress has acquired secondary meaning. Consumers and industry professionals alike know that PLAINTIFF's Trade Dress signifies a high-end product that originates from PLAINTIFF.

18.    Since 2015, PLAINTIFF has been continuously selling its Color Switch branded product on its website, veramona.com and through various retailers, with more than three million units sold in that time. PLAINTIFF has continuously sold its Color Switch branded product via multiple big-name retailers including Sephora, Macy's, Marshall's, Burlington, Kohl's, Morphe, Planet Beauty, Amazon, Walmart, and others.

19.     PLAINTIFF has owned the website veramona.com for over nine years, where PLAINTIFF has been continuously selling the trademarked Color Switch product. PLAINTIFF's website also displays PLAINTIFF's Trade Dress.

20.     PLAINTIFF is also the owner of several social media accounts where PLAINTIFF promotes its trademarked Color Switch product, including:

- Facebook (https://www.facebook.com/veramonabeauty?mibextid=LQQJ4d);
- Instagram (https://instagram.comvera mona?igshid=MzMyNGUyNmY2YQ) with 85,300 followers;
- YouTube (https://youtube.com/user/@Veramona7412.com) with viewed content as high as 59,000 individual views for a single video; and
- TikTok (https://tiktok.com/Veramona.com).

21.     Over the past nine years, PLAINTIFF's Color Switch branded product has gained widespread acclaim in the beauty industry with both professionals and general consumers. In addition, PLAINTIFF has been selling its trademarked Color Switch product throughout the world. In the United States, the trademarked Color Switch product has been sold by Amazon, Sephora, Macy's, Nordstrom, and Glamour Studios among numerous other well-known and respected retail establishments.

22.     PLAINTIFF's Color Switch branded product has also been included in multiple subscription beauty boxes, which are curated specifically to introduce high-end beauty products to general consumers, leading to increased popularity and visibility. Examples include Ipsy in 2018 and FabFitFun in 2019.

23.     PLAINTIFF's trademarked Color Switch product has a stellar reputation. It has been featured in magazine articles, including Cosmopolitan UK, Women's Health USA, Voyage LA Magazine, Beauty Independent, and Shoutout LA. Letty Calvo has appeared on local news programs promoting PLAINTIFF's trademarked Color Switch, including San Francisco's KRON4, Utah's KSL5, and was invited to and did appear on the Today television program to discuss and feature PLAINTIFF's trademarked Color Switch product.

SECOND AMENDED COMPLAINT FOR DAMAGES

24.    PLAINTIFF's trademarked Color Switch is also popular among social media influencers[1] and professional makeup artists within the beauty industry, with influencer reviews and promotional videos reaching views by individual consumers in the millions. For example, a 2015 video review on YouTube by "grav3yardgirl" raving about Color Switch reached a staggering 2,574,588 views by individual consumers. In the video, the influencer states that she had "never heard of [Color Switch] before, but I saw [it] on Jeffree Starr's Instagram page and on the [Instagram] Popular Page and I am just so excited to try this today." After trying out the Color Switch product in the video and providing a tutorial on its use, the influencer went on to state: "I love this thing!"  A sampling of additional accolades Color Switch has won are attached hereto as **Exhibit B**.

25.    Over 770 social media influencers and professional makeup artists have repeatedly and enthusiastically promoted PLAINTIFF's trademarked Color Switch product since the inception of Color Switch and continuing. Among those influencers is, for example:

- Jeffree Star, an internet personality, makeup artist, and founder/owner of Jeffree Star Cosmetics. Jeffree Star has over 14 million followers on Instagram, 15.8 million subscribers on YouTube, and followers in the millions on every other major social media platform. Jeffree Star's content consistently enjoys individual views in the tens of millions from consumers who value and rely on Star's reviews and recommendations when making decisions about what products to purchase.

---

[1] Companies that manufacture and sell high-end cosmetic products universally rely upon social media "influencers" to provide marketing promotions for beauty products. This is referred to as "Influencer Marketing." An influencer is an individual who has the power to affect purchasing decisions of others because of his/her authority, knowledge, expertise, position, and/or relationship with his/her audience, and who has a large consumer following in a distinct niche with whom he/she actively engages. These individuals are not merely marketing tools, but, rather, social relationship assets with which brands can collaborate to achieve their marketing objectives. Influencers use blogging, YouTube, podcasts, and social media to promote products they use and/or have brand relationships with. Consumers look to influencers, who create trends and promote products they believe in, as a foundation in their decision-making processes when considering what products they should purchase. In this way, Influencer Marketing is used nearly exclusively to promote high-end beauty products, with a low percentage of reliance on traditional marketing tactics such as print or television advertising.

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

- Huda Kattan, makeup artist and founder of the cosmetic company Huda Beauty, who enjoys followers and subscribers in the millions across all social media platforms.

- Other big names in the beauty industry promoting Color Switch are Tamanna Roashan and Desi Perkins, each of whom have social media followers and subscribers in the millions.

- Additionally, dozens of smaller creators have independently reviewed and promoted Color Switch, with their reviews consistently attaining individual consumer views in the thousands.

26.    In March 2018, PLAINTIFF subscribed to RangeMe, a product discovery platform used by retail buyers, including DEFENDANT, to source new products for their retail stores. RangeMe matches brand suppliers with retail buyers looking for new products in the supplier's category. Suppliers, such as PLAINTIFF, pay a fee to join the platform, where they create product profiles that detail all the key information retail buyers need to consider when looking for new and unique products. The platform allows suppliers to build brand awareness and new relationships with retail buyers by allowing retail buyers direct access to peruse various suppliers' brands and products. When a retail buyer discovers a brand or product they are interested in, they then "short list" that brand or product to gain access to the supplier's entire RangeMe profile, including all their listed products. The supplier receives notifications of its brand being "short listed" by retailers who are actively reviewing and showing an interest in the supplier's product. When PLAINTIFF created its RangeMe profile, it included its entire Color Switch product line, including images, descriptions, and the ® symbol indicating its ownership of the Color Switch trademark.

27.    On March 27, 2018, RangeMe notified PLAINTIFF that DEFENDANT had "short listed" PLAINTIFF's Color Switch branded product, meaning that DEFENDANT had reviewed and showed an interest in PLAINTIFF's Color Switch branded product.

SECOND AMENDED COMPLAINT FOR DAMAGES

**PLAINTIFF's and DEFENDANT's Communications**

28.    On January 30, 2019, PLAINTIFF became aware that DEFENDANT was selling a brush cleaner by Sonia Kashuk that was similar to the Color Switch branded product. As soon as PLAINTIFF became aware of this fact, PLAINTIFF contacted DEFENDANT via email and informed DEFENDANT that PLAINTIFF was the seller of "the very first Dry makeup brush cleaner, Color Switch®." PLAINTIFF also mentioned that PLAINTIFF would be happy to supply the "Color Switch®" to DEFENDANT. At all times, PLAINTIFF used the ® symbol when mentioning Color Switch, so that DEFENDANT was put on notice that Color Switch is PLAINTIFF's registered trademark. A true and correct copy of the email is attached hereto as **Exhibit C**.

29.    PLAINTIFF also emailed at least 16 individual employees of DEFENDANT, as well as three different departments (Guest Relations, Vendor Development Team, and Executive Team). PLAINTIFF included the registered trademark symbol (®) each time PLAINTIFF mentioned the Color Switch brand.

30.    In response to the initial email communication from PLAINTIFF, on January 30, 2019, Alexia from DEFENDANT's Guest Relations department responded to PLAINTIFF using the registered trademark ® symbol connected to the Color Switch mark, stating DEFENDANT "look[ed] forward to working closer with you about the Color Switch®." A true and correct copy of the email is attached hereto as **Exhibit D**.

31.    On February 12, 2019, Michael Kroll, DEFENDANT's Senior Counsel for Brands who represents DEFENDANT with respect to intellectual property claims against DEFENDANT, online intellectual property infringements, and domain name strategy ("Senior Counsel Kroll"), also responded to PLAINTIFF's January 30, 2019 email communication. Senior Counsel Kroll did not address the issue of the duplicate product, but simply stated that DEFENDANT was not interested "in bringing your company on as a supplier" and wished PLAINTIFF the best in its "future endeavors." A true and correct copy of the email is attached hereto as **Exhibit E**.

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

32.    On May 6, 2019, PLAINTIFF sent another email regarding DEFENDANT's Sonia Kashuk duplicate product, pointing out the consequences of the duplicate on PLAINTIFF's Color Switch product: "I understand you retail a duplicate of our original Color Switch® under your [duplicate] brand.… [T]therefore we would be so grateful to work together. These types of duplicates have definitely affected our business overall and [we] would love to have the opportunity to regain some of that business." A true and correct copy of the email is attached hereto as **Exhibit F**. PLAINTIFF's emails regarding the duplicate product were ignored by DEFENDANT.

33.    On January 6, 2022 and October 26, 2022, PLAINTIFF sent catalogs of PLAINTIFF's trademarked Color Switch product to DEFENDANT in an effort to persuade DEFENDANT to sell PLAINTIFF's brand. These catalogs included images and descriptions of PLAINTIFF's Color Switch branded products and Trade Dress, and at all times used the registered trademark ® symbol in connection with the Color Switch mark.

34.    On February 20, 2023, after numerous emails with DEFENDANT where DEFENDANT was put on notice of PLAINTIFF's trademark rights in the Color Switch brand, PLAINTIFF discovered that DEFENDANT chose to capitalize on PLAINTIFF's popular, well respected, high-end trademarked Color Switch brand mark by selling a nearly identical brush cleaner in nearly identical packaging, with PLAINTIFF's trademarked brand name Color Switch displayed prominently on the packaging and tin.

35.    On February 21, 2023, Letty Calvo, on behalf of PLAINTIFF, contacted DEFENDANT via email again, stating: "I am reaching out to you in one final hope that a [DEFENDANT] team member will do what is legally and ethically correct… Yesterday, I took my 6-year old and 14-year old to Target, because it is one of our favorite places to shop and as I walked by your beauty department, I found that Target carries an instant brush cleaner, once again, but now with our registered trademark, Color Switch®. Here is a link to the Color Switch® I purchased from your Temecula, CA store." The link to DEFENDANT's infringing Color Switch product was included

9

in PLAINTIFF's email. The link belonged to DEFENDANT and was accessible at the time PLAINTIFF sent her email. DEFENDANT disabled the link to DEFENDANT's website soon after PLAINTIFF's email so it is no longer available to access by anyone other than DEFENDANT. A true and correct copy of the email and its attachments are attached hereto as **Exhibit G**. However, PLAINTIFF did capture two contemporaneous screenshots of the website at the time it discovered DEFENDANT's infringing product. True and correct copies of those screenshots are below.




36. On that same day, while still inside DEFENDANT's retail location in Temecula, California, PLAINTIFF took multiple photographs of DEFENDANT's physical infringing product, and purchased one unit of the product to further inspect the product contained inside the sealed packaging. PLAINTIFF later took photographs of the infringing product after removing it from its outer packaging and separating it into individual components. True and correct copies of those photographs are below:

///

///

///

///

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121








37. On February 25, 2023, Senior Counsel Kroll responded to Letty Calvo's email on behalf of DEFENDANT. Senior Counsel Kroll assured PLAINTIFF that he would begin an investigation into the "allegations" contained in PLAINTIFF's February 21, 2023 email and would "follow up" with her when he had further information. A true and correct copy of the email is attached hereto as **Exhibit H**. PLAINTIFF is informed and believes, and thereon alleges, that Senior Counsel Kroll had access to DEFENDANT's link and viewed it during his "investigation." He never "follow[ed] up" with PLAINTIFF nor did Senior Counsel Kroll at any time inform PLAINTIFF that he was unable to access the link.

### DEFENDANT's Sale of PLAINTIFF'S Product

38.    Although PLAINTIFF discovered DEFENDANT's sale of PLAINTIFF's product on February 20, 2023, PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANT began selling the trademarked Color Switch product well

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

1 before the date of discovery. DEFENDANT's original sale website showed the price of

2 DEFENDANT's infringing product was set at $3.99 per unit, which severely undercut

3 PLAINTIFF's sale price per unit, which at the time was approximately $15 per unit.

### Consumer Confusion and Crossover

5     39.    PLAINTIFF and DEFENDANT sell identical products (dry makeup brush

6 cleaners) within the same international class of goods and within the same retail

7 channels. In addition, PLAINTIFF and DEFENDANT advertise, market, promote, and

8 sell their respective products extensively on social media. As such, PLAINTIFF's and

9 DEFENDANT's customers are likely to encounter both parties' products. As of the date

10 of this filing, PLAINTIFF is informed and believes, and thereon alleges, that

11 DEFENDANT's infringing product is still available for purchase via the same online

12 retail marketplace, and DEFENDANT'S infringing product appears in the same search

13 results when a potential consumer performs a Google search for Color Switch products.

14 The results of one such search are identified in the following screenshots of a Google

15 search performed on January 29, 2024 (the "Google Search"). The Google Search yields

16 a Mercari marketplace sales listing for three infringing units as evidenced in the images

17 directly below. The Mercari marketplace listed price for three brand-new infringing

18 units is $14, which averages approximately $4.70 per unit, and deeply undercuts

19 PLAINTIFF's price for a brand-new unit, which is currently set at $12.



AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

SECOND AMENDED COMPLAINT FOR DAMAGES

40.     PLAINTIFF's trademarked Color Switch product line has acquired secondary meaning for consumers and industry professionals over the years for its high-end look and feel, and its superior quality and reliability. PLAINTIFF's product is always sold in a circular metal tin (giving the product a high-end look and feel), with the Color Switch registered mark prominently displayed on the lid of the tin, using foundational colors of purple, blue/turquoise, pink, and white. PLAINTIFF's product line is packaged in a square box with a clear window through which the consumer can see the inner product tin. PLAINTIFF's promotional graphics include a picture of the open tin, with the lid offset, so the consumer can see the brush cleaning sponge inside. DEFENDANT's sale of a virtually identical trade-dress, combined with DEFENDANT's use of PLAINTIFF's trademarked Color Switch mark, and DEFENDANT's use of identical promotional graphics for its identical product is likely to result in customer confusion.

41. At least two large marketing platforms, Walmart and eBay, are hosting the sale of DEFENDANT's infringing Color Switch product under DEFENDANT's title of "Brush Blend Beautiful." The name of the third-party vendor found on Walmart's website is MJ Entertainment. The name of the third-party vendor on eBay's website is Videojam-Half. Videojam-Half identifies itself as "a contracted reseller to Target" in its description for Defendant's accused infringing product, and further states that its "[p]roduct images are provided directly from the Target catalog." Plaintiff included screen shots of Walmart's and eBay's websites where the foregoing language is clear. Exhibit I. (screen shots of Walmart & eBay products).

42. DEFENDANT'S document production evidenced that DEFENDANT willfully and intentionally created a false designation of origin by undertaking specific efforts to confuse and deceive consumers into believing that its infringing Color Switch product was actually PLAINTIFF's popular trademarked product, and that the origin of DEFENDANT'S inferior product was in fact PLAINTIFF. It did this consistently throughout the design process of its infringing product.

43. DEFENDANT consistently referred to its infringing product as "Color Switch" which was always in quotation marks, using title case, and was typically associated with an additional product description (not in quotes), such as "shadow switching pan." Exhibit J.  On information and belief, the use of quotation marks and title case font for the words Color Switch indicates willful and intentional behavior in an effort to capitalize on PLAINTIFF'S brand and product popularity. DEFENDANT was made aware no less than five (5) times from January 2019 through February 2023 of PLAINTIFF'S trademarked brand name, design, packaging, media coverage, and its popularity among makeup artists and consumers. On information and belief, DEFENDANT, rather than agreeing to PLAINTIFF's repeated requests to carry its popular, high end trademarked product, decided instead to undercut PLAINTIFF'S ability to sell its trademarked product by designing, manufacturing, and selling a nearly identical product of lesser quality at a drastically reduced price.

44. On information and belief, to further ensure that DEFENDANT'S infringing product would be passed off as PLAINTIFF's trademarked product, DEFENDANT specifically directed that its BRUSH BLEND BEAUTIFUL mark be placed in small font on the back of the packaging of its infringing product. (Exhibit K). The words "brush blend beautiful" are largely descriptive for the type of product in question, a dry *brush* cleaner. Placing these words on the back of the packaging indicate to the average consumer that they are describing the product, rather than indicating the product's origin. DEFENDANT ensured that no indication of trademark registration was used in association with its brand name, while ensuring the words "Color Switch" remained front and center of its product packaging, in bold, capitalized font. (Exhibit L). On information and belief, the strategic placement of PLAINTIFF'S registered trademark prominently on the front of DEFENDANT'S packaging, while DEFENDANT'S owned brand mark was surreptitiously placed in small font on the back, was done in a willful and calculated effort to confuse and deceive average consumers as to the actual origin of DEFENDANT'S infringing product.

45. DEFENDANT's further efforts to cause consumer confusion is evident in DEFENDANT's pricing and placement of its infringing Color Switch product to elevate its own eyeshadow brush cleaner, Sonia Kashuk.



Exhibit M.

46. One factor that contributes to the likelihood of consumer confusion includes the consumer's degree of care. The Ninth Circuit's jury instruction, number 15.18, notes "the more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be." DEFENDANT's strategy in its pricing and placement of its infringing Color Switch product ensured less scrutiny by the consumer as to DEFENDANT's infringing Color Switch product. DEFENDANT sold its infringing Color Switch product for $3.99 and its Sonia Kashuk brand for $9.99. At the time, Plaintiff's Color Switch product sold for $15.00, was considered high end, and was greatly respected. Placing DEFENDANT's infringing Color Switch product on the lowest shelf at the lowest price caused the likelihood of confusion as it attracted the less sophisticated consumer who was less likely to be careful and discriminating with regard to its purchase of DEFENDANT's infringing Color Switch product. DEFENDANT's actions were not only likely to cause confusion, mistake, or deceive consumers regarding

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

SECOND AMENDED COMPLAINT FOR DAMAGES

the sponsorship, affiliation, or origin of DEFENDANT's infringing Color Switch product, DEFENDANT's actions were intended to do so.

<strong>PLAINTIFF has Priority over DEFENDANT</strong>

47.    DEFENDANT offered and advertised a product that used PLAINTIFF's trademark without PLAINTIFF's authorization.

48.    PLAINTIFF has been using its Color Switch trademark since 2015, and, therefore, has priority over DEFENDANT, who began using Color Switch well after 2015.

49.    DEFENDANT promoted and sold products displaying the Color Switch name to buyers in this District.

<strong><u>COUNT I</u></strong>

<strong>(Trademark Infringement of a Registered Mark – 15 U.S.C. § 1114 <u>et seq.</u>)</strong>

50.    PLAINTIFF incorporates the preceding allegations as if fully set forth herein.

51.    PLAINTIFF owns the incontestable federal trademark registration for Color Switch, U.S. Registration number 4,703,823.

52.    PLAINTIFF has used the Color Switch trademark in commerce continuously and exclusively since 2015.

53.    PLAINTIFF never abandoned or discontinued its use of Color Switch in connection with its business and goods.

54.    PLAINTIFF has priority over DEFENDANT, who began promoting and selling Color Switch well after PLAINTIFF.

55.    PLAINTIFF's longstanding use of the Color Switch trademark grants PLAINTIFF the exclusive right to use the mark in connection with its business and goods specified in the application.

56.    DEFENDANT had both actual and constructive knowledge of PLAINTIFF's ownership rights in its federally registered trademark prior to DEFENDANT's infringing use of the trademark.

16

<strong>SECOND AMENDED COMPLAINT FOR DAMAGES</strong>

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

57.    DEFENDANT and PLAINTIFF sell identical goods, a makeup brush cleaning sponge.

58.    DEFENDANT and PLAINTIFF both sell cosmetic beauty products.

59.    DEFENDANT offered its goods under the infringing Color Switch trademark in many of the same channels of trade as PLAINTIFF offers its goods.

60.    DEFENDANT's use of the Color Switch name is identical to PLAINTIFF's trademark, and is used on and in connection with products that are identical to PLAINTIFF's products.

61.    DEFENDANT's use of Color Switch likely caused confusion, mistake or deception as to the affiliation, connection or association of PLAINTIFF with DEFENDANT in violation of 15 U.S.C. § 1114.

62.    DEFENDANT's unauthorized use in commerce of Color Switch constituted trademark infringement under the Lanham Act.

63.    As a direct and proximate result of DEFENDANT's unauthorized use of PLAINTIFF's Color Switch trademark, DEFENDANT damaged PLAINTIFF's goodwill and reputation and caused PLAINTIFF a loss of sales and profits. DEFENDANT's actions caused harm to PLAINTIFF and to the public, who were confused by DEFENDANT's unauthorized use of PLAINTIFF's Color Switch trademark.

64.    As a further direct and proximate result of DEFENDANT's actions, PLAINTIFF was damaged and is entitled to receive compensation arising from its lost sales and lost profits in an amount to be proven at the time of trial.  In addition, PLAINTIFF is entitled to disgorge DEFENDANT's profits, and is entitled to interest and to its attorneys' fees and costs incurred in bringing this action, all in an amount to be proven at the time of trial.

65.    DEFENDANT'S actions entitle PLAINTIFF under § 1117(a) to recover (1) defendant's profits, (2) any damages sustained by PLAINTIFF, and (3) the costs of this action. In assessing damages the court may enter judgment, according to the

circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.

66.    The foregoing act of infringement was deliberate, willful and wanton, making this an exceptional case within 15 U.S.C. § 1117.

## COUNT II

### (Unfair Competition, Trademark Infringement, False Designation of Origin & False Description – 15 U.S.C. § 1125(a) et seq.)

67.    PLAINTIFF incorporates the preceding allegations as if fully set forth herein.

68.    PLAINTIFF has used the Color Switch trademark in commerce continuously and exclusively since 2015.

69.    DEFENDANT offered its goods under the infringing Color Switch trademark in many of the same channels of trade as PLAINTIFF offers its goods.

70.    DEFENDANT's Color Switch name was identical to PLAINTIFF's trademark.

71.    DEFENDANT and PLAINTIFF compete in the same trade channels and market spaces.

72.    DEFENDANT's and PLAINTIFF's goods are identical, and are both cosmetic beauty products that travel in similar channels of trade.

73.    Given the foregoing, consumers would have recognized DEFENDANT's Color Switch name as the same used by PLAINTIFF.

74. The acts and conduct of DEFENDANT constituted passing off and false designation of origin under 15 U.S.C., § 1125.

75. DEFENDANT has used or made in commerce throughout the United States, including California, one or more words, terms, names, symbols, or goods, or any combination thereof, or any false and/or misleading designation of origin, and/or a false and/or misleading description of fact that was likely to cause consumer confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

DEFENDANT's infringing Color Switch product with PLAINTIFF, or as to then origin, sponsorship, or approval of DEFENDANT's infringing Color Switch product by PLAINTIFF.

76. DEFENDANT has intended to defraud and confuse buyers by adoption of the PLAINTIFF'S Mark on its competitive product. On information and belief, DEFENDANT was aware that PLAINTIFF's owned the COLOR SWITCH Mark prior to its adoption of the COLOR SWITCH name and intended to trade off the goodwill of PLAINTIFF's Mark by placing it on competitive products to PLAINTIFF's COLOR SWITCH products.

77. By reason of the foregoing, DEFENDANT has intentionally and willfully violated 15 U.S.C., § 1125.

78.    PLAINTIFF never abandoned or discontinued its use of Color Switch in connection with its business and goods.

79.    PLAINTIFF had priority over DEFENDANT, who began promoting and selling Color Switch well after PLAINTIFF.

80.    As such, DEFENDANT's use in commerce of Color Switch, as used on goods that do not emanate from PLAINTIFF, constituted a false designation of origin by representing that DEFENDANT's goods were those of PLAINTIFF.

81.    DEFENDANT's use in commerce of Color Switch with knowledge that PLAINTIFF owned, has used, and continues to use, the trademark Color Switch constituted intentional conduct by DEFENDANT to make a false designation of origin and a false description about its goods.

82.    DEFENDANT deliberately and willfully attempted to trade on PLAINTIFF's goodwill in PLAINTIFF's name, trademark, and reputation that PLAINTIFF established in connection with its product and did so to confuse consumers as to origin, association, and sponsorship of DEFENDANT's goods.

83.    DEFENDANT's conduct likely caused consumers confusion as to the affiliation, connection or association of DEFENDANT's product with PLAINTIFF's in

violation of 15 U.S.C. § 1125(a).

84.    As the direct and proximate result of such unfair competition, PLAINTIFF suffered monetary loss to its business, reputation, and goodwill. Given the foregoing, PLAINTIFF is entitled to remedies under the Lanham Act.

85. As an actual and proximate result of DEFENDANT's willful and intentional acts, PLAINTIFF has suffered lost sales and damage to its reputation and goodwill. PLAINTIFF is entitled to disgorgement of DEFENDANT's profits, actual damages and lost sales, prejudgment interest, and PLAINTIFF's attorneys' fees and costs incurred in bringing this action, all in an amount to be proven at trial.

86.    DEFENDANT'S actions entitle PLAINTIFF under § 1117(a) to recover (1) defendant's profits, (2) any damages sustained by PLAINTIFF, and (3) the costs of this action. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.

## **COUNT III**

### **(Unregistered Trade Dress Infringement – 15 U.S.C. § 1125 (a) et seq.)**

87.    PLAINTIFF incorporates the preceding allegations as if fully set forth herein.

88.    PLAINTIFF has exclusively used PLAINTIFF's Trade Dress as its distinctive product packaging and on its website, social media accounts, and with industry influencers since at least 2015. Plaintiff provides high quality products to customers throughout the United States.

89.    PLAINTIFF has consistently used PLAINTIFF's Trade Dress in connection with its makeup cleaning sponge products.

90.    PLAINTIFF's widespread use of PLAINTIFF's Trade Dress in multiple big-name retailers across the United States, as well as on its website and social media accounts, has made it so the public uniquely associates PLAINTIFF's Trade Dress with PLAINTIFF. In addition, PLAINTIFF's Trade Dress has achieved widespread industry

recognition. Below is a table identifying PLAINTIFF's Trade Dress which DEFENDANT used on its identical product:

| Description | PLAINTIFF Product | DEFENDANT Product |
|---|---|---|
| Color scheme | Blue/teal, white, pink, purple | Blue/teal, white, pink, purple |
| Shape | Cylindrical with fully removable lid | Cylindrical with fully removable lid |
| Materials | Metal outer tin, inner small white circular sponge located in center of larger black circular sponge | Metal outer tin, inner small white circular sponge located in center of larger black circular sponge |
| Size | 3.25-inch diameter | 3.25-inch diameter |
| Font | COLOR SWITCH block lettering in all caps with the words "Brush Cleaner" located directly below the COLOR SWITCH trademark | COLOR SWITCH block lettering in all caps with the words "Brush Cleaner" located directly below the COLOR SWITCH trademark |
| Packaging | Square box with clear window | Square box with clear window |

91.    PLAINTIFF's use of the color scheme creates an overall mood and style, and serves no functional purpose for PLAINTIFF's product.

92.    Since 2015, PLAINTIFF has used the distinct color scheme and lettering product labels, product packaging, and on its website and social media accounts.

93.    PLAINTIFF's widespread use of its distinct lettering and style on its product packaging, website and social media accounts creates a visual design that is uniquely associated, and readily identifiable, with PLAINTIFF's product.

94.    PLAINTIFF's use of a 3.25 inch diameter round metal tin as the outer vessel containing the inner cleaning sponge creates a high-end look and feel,

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

contributing to an overall mood and style to the product, and serves no functional purpose for PLAINTIFF's product.

95.    PLAINTIFF's use of the lettering and style creates an overall mood and style, and serves no functional purpose for PLAINTIFF's product.

96.    As a result of the foregoing, PLAINTIFF has established strong Trade Dress rights and ownership in PLAINTIFF's Trade Dress.

97.    DEFENDANT also sold an identical product to PLAINTIFF's in product packaging that is confusingly similar to PLAINTIFF's Trade Dress. DEFENDANT used PLAINTIFF's trademark on the product packaging for its product.

98.    PLAINTIFF has been using PLAINTIFF's Trade Dress exclusively as its trade dress since well before DEFENDANT began selling its beauty sponge product in packaging confusingly similar to PLAINTIFF's Trade Dress.

99.    The actions of DEFENDANT described herein constitute infringement of PLAINTIFF's Trade Dress in violation of 15 U.S.C. § 1125(a).

100.    DEFENDANT's use of PLAINTIFF's similar lettering, coloring and style on its packaging and website infringes on PLAINTIFF's Trade Dress rights by using in commerce confusingly similar design elements, identical color schemes, and similar product packaging for the same product as PLAINTIFF.

101.    DEFENDANT's infringing use of PLAINTIFF's aforementioned Trade Dress was likely to cause confusion, mistake or deception of the consumer and public between PLAINTIFF's product and DEFENDANT's product.

102.    PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANT had actual knowledge of PLAINTIFF's rights and use in commerce of PLAINTIFF's Trade Dress and, thus, DEFENDANT, without the permission or consent of PLAINTIFF, willfully and intentionally violated 15 U.S.C. § 1125(a).

103.    DEFENDANT's acts constituted willful and intentional infringement on PLAINTIFF's trade dress, and DEFENDANT did so with the intent to trade upon PLAINTIFF's reputation and goodwill by causing confusion and mistake among

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

SECOND AMENDED COMPLAINT FOR DAMAGES

consumers and the public to deceive the consumer and public into believing
DEFENDANT's product was associated with, sponsored by, approved by, or
originating from PLAINTIFF when it was not.

104.    As the direct and proximate result of such Trade Dress infringement,
PLAINTIFF suffered monetary loss to its business, reputation, and goodwill. Given the
foregoing, PLAINTIFF is entitled to remedies under the Lanham Act.

105. DEFENDANT'S actions entitle PLAINTIFF under § 1117(a) to recover (1)
defendant's profits, (2) any damages sustained by PLAINTIFF, and (3) the costs of this
action. In assessing damages the court may enter judgment, according to the
circumstances of the case, for any sum above the amount found as actual damages, not
exceeding three times such amount.

## COUNT IV

### (State Common Law Trademark Infringement - Cal. Bus. & Prof. Code § 14200 et seq.)

106.    PLAINTIFF incorporates the preceding allegations as if fully set forth
herein.

107.    By virtue of having used, and continuing to use, the Color Switch
trademark, PLAINTIFF has acquired common law rights in the trademark.

108.    By virtue of PLAINTIFF's Color Switch branded products' widespread
popularity among and promotions by makeup artists and influencers, social media
following, TV and print media coverage, and partnerships with multiple big-name
retailers, PLAINTIFF's trademark has acquired secondary meaning.

109.    DEFENDANT's infringing use of the Color Switch name likely caused
confusion, mistake, or deception among consumers, who believed DEFENDANT's
goods originated from, was affiliated with, and/or endorsed by PLAINTIFF, when, in
fact, they were not.

110.    As a direct and proximate result of DEFENDANT's infringement on
PLAINTIFF's common law and State trademark rights, PLAINTIFF has suffered

monetary loss to its business, reputation, and goodwill. Given the foregoing, PLAINTIFF is entitled to remedies available under the law.

## COUNT V

### (State Unfair Competition - Cal. Civ. Code § 17200 et seq.)

111.    PLAINTIFF incorporates the preceding allegations as if fully set forth herein.

112.    The acts and conduct of DEFENDANT constituted unfair competition under California Business & Professions Code § 17200 et seq.

113.    By PLAINTIFF's continuous use of its Color Switch trademark and Trade Dress while providing its products to consumers, PLAINTIFF developed valuable goodwill in its Color Switch trademark and PLAINTIFF's Trade Dress, which was associated exclusively with PLAINTIFF by consumers and the general public throughout the United States.

114.    DEFENDANT had actual knowledge of the existence of PLAINTIFF's use of its Color Switch trademark and PLAINTIFF's Trade Dress.

115.    DEFENDANT engaged in the promotion and sale of a product similar or nearly identical to PLAINTIFF's product that used substantially an identical mark to PLAINTIFF's Color Switch mark. DEFENDANT also sold its infringing product for a price that significantly undercut the price of PLAINTIFF's trademarked product.

116.    DEFENDANT used PLAINTIFF's name to divert sales and goodwill from PLAINTIFF, giving DEFENDANT an unfair benefit over PLAINTIFF.

117.    DEFENDANT's use of PLAINTIFF's Color Switch trademark and PLAINTIFF's Trade Dress on its products and on its website, was misleading, confused consumers and diverted sales from PLAINTIFF to DEFENDANT for DEFENDANT's own benefit.

118.    DEFENDANT's misleading advertising and sale of a product bearing the Color Switch name caused injury to PLAINTIFF.

119.    As a direct and proximate result of DEFENDANT's unfair competition

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121

SECOND AMENDED COMPLAINT FOR DAMAGES

under common and State law, PLAINTIFF has suffered monetary loss to its business, reputation, and goodwill. Given the foregoing, PLAINTIFF is entitled to remedies available under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF respectfully prays that the Court grant the following relief:

A. Judgment against DEFENDANT for compensatory damages for an amount to be determined at trial for trademark infringement, trade dress infringement and unfair competition;

B. Pursuant to 15 U.S.C. § 1117(a), recovery of DEFENDANT'S profits and all damages sustained by PLAINTIFF for an amount up to three times above the amount found as actual damages.

C. Full costs in litigating this matter, including reasonable attorneys' fees, pursuant to 15 § U.S.C. 1117(a), *inter alia*, 17 U.S.C. §§ 505 and 1203(b)(4) and (5), and 15 U.S.C. §§ 1114 and 1125(a).

D. An award of prejudgment interest; and

E. Such further relief as the Court deems just and equitable.

DATED: October 17, 2024

AH GENERAL COUNSEL SERVICES

By: */s/ Johnny Manriquez*
Johnny Manriquez, Esq. (Bar No. 217126)
445 Eastgate Mall, Suite 200
San Diego, CA 92121
johnny.manriquez@ahgcservices.com

Attorney for Plaintiff

AH GENERAL COUNSEL SERVICES
4445 Eastgate Mall, Suite 200
San Diego, CA 92121